IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **STEVEN RAY BORDEN**, | Case No. 1:17-cv-1987-SI |
| Plaintiff, | **ORDER** |
| v. | |
| **DEPUTY WARD, B. MAUITY, et. al**, | |
| Defendant(s). | |

**Michael H. Simon, District Judge.**

On February 28, 2018, Plaintiff *pro se* Steven Borden ("Plaintiff") filed an amended complaint against Defendants Deputy Ward and B. Mauity (jointly, "Defendants"). Plaintiff asserts a claim under 42 U.S.C. § 1983 for violations of Plaintiff's Eighth Amendment rights arising from Plaintiff's medical care during a 60-day period of incarceration at Josephine County Jail ("JCJ"). Defendant Mauity has not yet been served. On April 5, 2018, Defendant Ward filed a motion to dismiss for failure to state a claim. For the reasons given below, Defendant's motion is granted.

**STANDARDS**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual

allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Courts may also consider "exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th cir. 2007). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A court must liberally construe the filings of a *pro se* plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). "'Unless it is absolutely clear that no amendment can cure the defect, . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action.'" *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original) (quoting *Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)). Under Federal Rule of Civil Procedure 8(a)(2), however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the

defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## BACKGROUND

The following facts are drawn from Plaintiff's amended complaint and the exhibits attached to that complaint. On August 12, 2016, Plaintiff jumped over a fence in residential neighborhood of Eugene, Oregon and injured his right foot. After a neighbor called 911, an ambulance took Plaintiff to Sacred Heart Hospital in Springfield, Oregon. At Sacred Heart, x-rays were taken of Plaintiff's right foot, and he was told that his calcaneus (heel bone) was broken in three places. Plaintiff's foot was set in a plaster splint, and he was told to make an appointment to see an orthopedist within three to five days to determine whether surgery or resetting of the foot was necessary. The discharge instructions noted that "[i]f surgery is not required, [Plaintiff] will probably be treated with a short-leg cast for 6 to 12 weeks," followed by physical therapy. Plaintiff was also given crutches, and his discharge instructions recommended that he take ibuprofen or Tylenol for pain, and keep his foot elevated and iced.

Upon his discharge from Sacred Heart, Plaintiff contacted his parole officer in Grants Pass, Oregon, who directed Plaintiff to return to Josephine County, the county of his commitment. Plaintiff was not able to purchase a bus ticket from Eugene to Josephine County until August 16, 2016. Upon his arrival in Josephine County, Plaintiff called 911 and was taken by the local police to JCJ, where he was held for 60 days for having violated his parole by leaving a work program in Eugene.

Defendant Deputy Ward was present for Plaintiff's intake into JCJ. Plaintiff gave Deputy Ward his discharge paperwork from Sacred Heart, which included the recommendation that

PAGE 3 – OPINION AND ORDER

Plaintiff see an orthopedist, and requested that an appointment be made with a specialist. Plaintiff was placed in administrative segregation so that he could keep his crutches, but an orthopedist appointment was not made. On August 18, 2016, Defendant B. Mauity, an EMT and medical contractor with JCJ, requested Plaintiff's medical records from Sacred Heart, including x-rays, a treatment plan and any prescriptions. On August 20th, Plaintiff saw Mauity for a medical screening. Mauity noted Plaintiff's broken foot, writing that Plaintiff experienced intermittent pain in his right foot, but that none was present at the moment. Mauity recommended that Plaintiff be given an extra mattress and two extra blankets to help elevate his feet, and prescribed Plaintiff 600 milligrams of ibuprofen twice per day. Plaintiff's treatment plan as of August 20, 2016 was a "soft case" cast, elevation, and ibuprofen. Plaintiff continued to request additional medical treatment and an orthopedist appointment at meal times, but was ignored. On September 15, 2016, Plaintiff submitted a medical request through the medical kiosk, expressing concern that he had not yet been given a permanent cast or seen an orthopedist to be evaluated for surgery. Plaintiff wrote that he did not want to "heal wrong." Plaintiff was seen by medical providers two days later, on September 17, when x-rays were taken and Plaintiff's splint was replaced.

Plaintiff was released from JCJ on October 18, 2016 and visited a podiatrist, Dr. Castle, in Grants Pass on October 21, 2018. Plaintiff alleges that Dr. Castle informed Plaintiff that "he had not healed" and his bone was displaced. The exam notes from Plaintiff's visit, which Plaintiff has attached to his complaint as "Exhibit 4," however, note that Plaintiff's heel "overall seems to be doing well." Plaintiff had little pain when Dr. Castle manipulated his foot, and what restrictions in range of motion and swelling that Plaintiff demonstrated, Dr. Castle attributed to guarding and nonuse. Based on Plaintiff's earlier x-rays from JCJ, Dr. Castle wrote that

PAGE 4 – OPINION AND ORDER

Plaintiff's fracture had resulted in "just mild displacement" and, though Dr. Castle did not have additional x-rays to evaluate for "medial or lateral displacement," the fracture "look[ed] to be healing well . . . at this time." Dr. Castle also noted that Plaintiff's splint was "quite disheveled and he has clearly been bearing some weight on the foot." For that reason, Dr. Castle gave Plaintiff a boot that would allow Plaintiff to bear weight on the foot so long as he avoided impact activities. Dr. Castle further wrote that Plaintiff "will likely develop some posttraumatic arthritic changes and may require surgery down the road." Plaintiff maintains that his foot is still injured and he walks with a limp.

## DISCUSSION

The treatment a prisoner receives in prison and the conditions of his confinement are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). As the Supreme Court has explained,

> The [Eighth] Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates[.]

*Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks and citations omitted). A prison official violates a prisoner's Eighth Amendment rights only when the claim satisfies both an objective and subjective inquiry. *Lopez v. Smith*, 203 F.3d 1122, 1132–33 (9th Cir. 2000). To meet the objective element, in the context of a claim for failure to provide medical care, a plaintiff must establish a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A serious medical need is the kind of injury that "a reasonable doctor or patient would find important and worthy of comment or treatment; . . . that significantly affects an individual's daily activities; or [causes] chronic and substantial pain." *Lopez*, 203 F.3d at 1131 (citation omitted).

The subjective inquiry requires a showing that a corrections officer acted with deliberate indifference to a plaintiff's serious medical needs. *Id.* at 1132. An official's deliberate state of mind is satisfied by showing that the official (1) purposefully acted or failed to respond to a prisoner's pain or possible medical need; and (2) the harm the prisoner suffered was caused by the indifference. *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006). "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Penner,* 439 F.3d at 1096 (determining that if doctor was aware of prisoner's need to see an orthopedist, the doctor was deliberately indifferent by failing to ensure prisoner's fracture was set and cast). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. . . ." *Farmer*, 511 U.S. at 837. A prison official also is not liable for deliberate indifference if the official responded reasonably to the prisoner's needs. *Id.* at 844.

Plaintiff's allegations satisfy the objective test, as his medical needs were serious. When Plaintiff was processed at JCJ, he had a recently fractured calcaneus, which his discharge paperwork from Sacred Heart described as "very painful" and "a serious fracture." As a result of this fracture, Plaintiff alleges that he relied on crutches and could not put weight on the foot, which is sufficient to establish that his injury significantly affected his daily activities. Thus, whether Plaintiff has stated a claim for an Eighth Amendment violation turns on whether Defendants were deliberately indifferent to Plaintiff's serious medical needs.

Defendant Ward argues that Plaintiff's allegations of deliberate indifference are undermined by the exhibits that Plaintiff has attached to his complaint, which show that he received reasonable care and that no harm arose from Plaintiff not having seen an orthopedist. In

certain circumstances, denying or delaying a recommended medical treatment can demonstrate deliberate indifference. In *Jett v. Panner*, the Ninth Circuit held that an plaintiff had raised triable questions of fact as to whether a warden and prison doctor had been deliberately indifferent by delaying Plaintiff's treatment by an orthopedist who could have properly set and cast his fractured thumb. 439 F.3d at 1098. Plaintiff contends that Defendants were deliberately indifferent because they did not promptly send him to an orthopedist to have x-rays taken, have his foot set in a permanent cast, and be evaluated for possible surgery. Plaintiff's discharge paperwork from the Sacred Heart emergency room recommended that Plaintiff "[c]all as soon as possible to make an appointment in 3-5 days" at an orthopedic clinic. Plaintiff alleges that he presented this paperwork to Defendants when he was being in-processed to JCJ, making them aware of his need for an orthopedic consultation, but was nevertheless denied an opportunity to see an orthopedist. Plaintiff also alleges that at meal times he continued to request medical attention due to pain and medical need but was ignored, and that his temporary splint was not replaced for a month after he was taken into custody. Such allegations may be sufficient to show that Defendants were aware of Plaintiff's need to see an orthopedist, but ignored that need.

      Plaintiff must show, however, that the harm suffered was created by that deliberate indifference. In *Jett*, for example, the plaintiff presented evidence that his thumb was deformed, and that the deformity was caused by the delay in having it properly set by an orthopedist. *Id.* Plaintiff argues in his response brief that, upon visiting a podiatrist after being released from JCJ, he learned that his foot had not healed correctly. The exhibits that Plaintiff attached to his complaint demonstrate that Defendant's failure to send Plaintiff to an orthopedist did not cause Plaintiff harm. The podiatrist who treated Plaintiff after Plaintiff's discharge from JCJ observed that Plaintiff's fracture "looks to be healing well . . . at this time." The podiatrist also observed

that Plaintiff had "[g]ood muscle strength throughout, decent range of motion in both ankles and he did not have a whole lot of discomfort when I inverted and everted his [broken] foot." What functional limitations Plaintiff had with his foot, the podiatrist attributed to "guarding and nonuse." Thus, even if Defendants were found to have been deliberately indifferent by deviating from the Sacred Heart emergency room doctor's recommendation, the treatment that Plaintiff did receive was ultimately appropriate for his injury.

To the extent that Plaintiff alleges that he experienced unnecessary pain as a result of Defendants' deliberate indifference, such allegations are also unsupported by Plaintiff's exhibits. The Sacred Heart emergency room discharge documents note that Plaintiff's fracture is "very painful," indicating that a certain amount of pain is inherent to the injury, regardless of the treatment plan. Moreover, the pain treatment that Plaintiff received at JCJ—ibuprofen and elevation—largely comported with the recommendations made by Sacred Heart—ibuprofen or Tylenol, elevation and ice.

Because Plaintiff's allegations, considered alongside his attached exhibits, do not demonstrate that Plaintiff experienced harm as a result of Defendants' alleged refusal to provide an orthopedist appointment, Plaintiff has not shown that Defendants were deliberately indifferent to his serious medical needs. Although this motion was filed only on behalf of Defendant Ward, the shortcomings in Plaintiff's complaint require dismissal of Plaintiff's complaint against both defendants.

**CONCLUSION**

Defendant Ward's Motion to Dismiss (ECF 25) is GRANTED. Plaintiff's Amended Complaint (ECF 19) is dismissed. If Plaintiff believes he can correct the deficiencies identified herein, Plaintiff may file an second amended complaint on or before May 29, 2018. Plaintiff's Motion to Serve Amended Complaint (ECF 26) is DENIED as moot.

PAGE 8 – OPINION AND ORDER

**IT IS SO ORDERED**.

DATED this 11th day of May 2017.

                                                           /s/ Michael H. Simon
                                                           Michael H. Simon
                                                           United States District Judge